IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROMUALDO PADILLA-MADERA,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO. 12-1357 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Romualdo Padilla Madera (hereafter plaintiff "Padilla") filed this federal complaint seeking judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner") denying his application for a protected period of disability and ensuing disability benefits. (Docket No. 1).[1]

On May 22, 2012, plaintiff Padilla, through Atty. Salvador Medina De La Cruz, filed a consent to proceed before the Magistrate Judge. (Docket No. 6).[2]

On October 31, 2012, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 10 and 11). On December 27, 2012, Atty. Medina De La Cruz filed plaintiff's memorandum of law. (Docket No. 14). Thereafter, on January 23, 2013, the Commissioner filed his memorandum. (Docket No. 15).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
  "… [t]he court shall have power to enter, upon the pleadings and transcript
   of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

**BACKGROUND**

Plaintiff Padilla filed an application for disability benefits with onset date of disability of March 7, 2007 because of depression, pain in his left knee and left knee osteoarthritis. After the application was initially denied, the requested administrative hearing was held. Plaintiff Padilla did not testify at the administrative hearing. Thereafter, the presiding Administrative Law Judge (hereafter the "ALJ") issued an opinion finding plaintiff Padilla was not considered under disability up to his insured period, that is, through December 31, 2007. The ALJ concluded plaintiff Padilla retained the residual functional capacity for the full range of light work, which was not significantly comprised by his non-exertional conditions. Since there was a significant number of light and sedentary type of work plaintiff could perform, the ALJ considered plaintiff Padilla was not disabled at any time between the alleged onset date and the date he was last insured. The Appeals Council denied the request for review.

Plaintiff Padilla submits the Commissioner erred in affirming the administrative decision of the ALJ. The ALJ determined plaintiff could not perform his past work as a paper cutting machine operator. Still, the ALJ also found there was alternate work available, which plaintiff avers was improperly determined by direct use of the Grids[3] regardless of the existence of significant non-exertional limitations of a mental condition

---

[3] The Medical Vocational Guidelines (Grids) are found at 20 C.F.R. Subpart P., Appendix 2.

and moderate limitations imposed because of a physical condition. (Docket No. 14, Plaintiff's memo., pp. 2-3).[4]

Notwithstanding, an examination of the record is contrary to what plaintiff's memorandum submits as the ALJ's determination in the opinion rendered on March 24, 2010. Therein the ALJ did not recognize the additional non-exertional limitations impeded his capacity to perform all or substantially all of the requirements of light work as asserted by plaintiff. (*Id.*, p. 10). Likewise, contrary to the ALJ's opinion, plaintiff submits the ALJ made a finding "that objective documentary medical evidence of record demonstrates that the claimant has since his alleged onset date, moderate personal, social and occupational limitations as a result of his mental impairment." (*Id.*, p. 10, Tr. P. 19, ¶ 1). Rather, the referred evidence instead provided that "... claimant had moderate mental limitations that allowed him to maintain attention and concentration necessary to complete simple tasks on a sustained basis." (Docket No. 9, Trans., p. 19).

The Commissioner's memorandum of law summarizes the medical evidence of record which served as ground for the ALJ's findings. (Docket No. 15). It referred to plaintiff Padilla being a younger individual and with education up to the twelfth grade who worked as a machine operator from January 1980 through March 13, 2002. Plaintiff reported a mental condition. He lives with his family, watches televisions and visits his sister's house, has no problems with his personal care, prepares his food, takes out the trash

---

[4] Plaintiff's memorandum argued the Grid should only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level. The testimony of a vocational expert is required when the Grid is used as a framework and the reduction of the occupational base is more than marginal. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Burgos López v. Secretary of Health & Human Servs., 747 F.2d 37, 42 (1st Cir. 1984).

and goes out occasionally, shopping for food some 3 times a month, although accompanied for he gets very nervous. Plaintiff also had a left knee condition that showed a tear in the medial meniscus and small erosion and ulceration of the medial tibial plateau. Plaintiff underwent arthroscopic surgery to repair the meniscus. (Docket No. 15, pp, 3-4).

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ considered the medical evidence of record and issued an opinion on March 24, 2010 finding plaintiff Padilla retained the residual functional capacity to perform the full range of light work and, thus, sedentary type of work. Since the full range of light work was not significantly compromised by non-exertional limitations, the ALJ determined there were approximately 1,600 unskilled work occupations that plaintiff Padilla could perform and, thus, numerous jobs existed in the national economy that he was able to do. (Docket No. 9, Trans., p. 20).

Plaintiff Padilla claimed disability for the protective period of onset date of March 7, 2007 through December 31, 2007, when he was last insured for disability purposes due to exertional and non-exertional conditions, to wit, a knee condition and a mental impairment. After the application was denied initially, as well as on reconsideration, an administrative hearing was held on March 11, 2010 wherein Padilla was represented by counsel.[5] (*Id.*, pp. 12 and 25-29).[6]

---

[5] The ALJ indicated plaintiff Padilla had previously claimed disability since March 13, 2002, which had been denied and upon review it was remanded by the Appeals Council. At *de novo* hearing, the ALJ issued another unfavorable decision which plaintiff did not follow through, instead he filed a new application with onset date of March 7, 2007. (*Id.*, p. 12).

[6] Plaintiff's counsel never objected at the administrative hearing that no vocational or expert testimony was considered. Counsel solely agreed as to the admission of documents for consideration and submitted the case, for which the hearing that initiated at 12:31 p.m. was deemed closed at 12:35 on March 11, 2010. (Docket No. 9, Trans., pp. 25-29).

The ALJ stated plaintiff Padilla met the insured status for disability under the present application up to December 31, 2007 and had not engaged in gainful activity since alleged onset date of March 7, 2007. Through the date he was last insured, that is, December 31, 2007 plaintiff Padilla's complaints were a knee condition, osteoarthritis and severe depression. (*Id.*, p. 14). The left knee condition results in limitation of motion was sustained by objective medical evidence through MRI on June 25, 2003 showing tear in the body of the medial meniscus and small erosion or ulceration in the articular surface. The condition revealed moderate restrictions, without any joint effusion, muscle atrophy or marked limitation or disabling complication. There were X-rays after plaintiff was last insured, on March 3, 2009, indicating osteoarthritis. Still, the rheumatologist reported only minimal limitation of motion of the left knee and lumbar spine. (*Id.*, p. 15).

The ALJ also discussed the emotional condition that was manifested by depressive mood, loss of concentration, forgetfulness, ill humor and poor stress tolerance. Dr. Félix Maldonado, treating psychiatrist, diagnosed a recurrent severe major depression with psychosis. The patient was found with diminished attention and concentration and affected memory, but was also described being logic, coherent, relevant, with normal psychomotor activity. A report by Dr. Maldonado dated March 2, 2010, after the insured period had expired on December 31, 2007, reported marked mental limitation with psychosis but the frequency of the appointments appeared as every 2 to 3 months, which the ALJ considered inconsistent with the severity of the condition indicated. The only partial hospitalization in regards with a mental condition appears on February of 2008, where the patient was stabilized and discharged with mild symptoms and some difficulty in social, occupational

or school functioning. Although the patient's evaluation was that he was depressed, he had the capacity to remember, understand and carry out short and simple instructions in a low stress work setting. (Docket No. 9, Trans., p. 15).

The ALJ applied in the above described administrative process the evaluation mandated by law, insofar as concluding that plaintiff Padilla: (1) met the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through December 31, 2007; (2) had not engaged in substantial gainful activity since the alleged onset date of disability of March 7, 2007; (3) allegations of severe impairments or combination thereof because of knee, musculo-skeletal field and moderate major depressive disorder, had more than a minimal effect on ability to perform basic work-related activities, and constituted severe impairments, for which Padilla was found unable to perform his previous work; (4) plaintiff Padilla did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record, plaintiff Padilla retained the residual functional capacity to perform the full range of light type of work limited to simple, unskilled type of jobs.

In examining the mental condition and limitations, the ALJ referred the evidence showed plaintiff Padilla had moderate restrictions as to activities of daily living. He watched television, prepared his own meals, bought groceries and visited relatives 2 or 3 times a week. Plaintiff claimed he could not pay bills, count change or administer savings or checking accounts because of forgetfulness, but he also indicated having no change in his ability to administer money since onset date of alleged impairments. As to concentration,

persistence and pace, the ALJ found there were moderate difficulties. Although Padilla indicated having problems with family members because of ill humor, there were no incidents because of irritability or anger problems. He also continued visiting his sister 2 or 3 times a week. Insofar as concentration, Padilla reported having no need to be remembered to take care of his personal needs and hygiene and the psychiatrist indicated he was found coherent, relevant and logic. A consultative neurologist observed a normal mental status. The record is devoid of exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning. (*Id.*, p. 16). Based on the considerations of the psychiatric review questionnaire and the criteria therein, the ALJ concluded the mental impairment did not meet the "B" or "C" criteria as to marked limitations for an extended duration. (*Id.*, p. 17).

Although there is no consultant psychiatric opinion, the non-examining Agency psychologist opined that during the period at issue plaintiff Padilla had moderate mental limitations that allowed him to maintain the attention and concentration necessary to complete simple tasks on a sustained basis. The ALJ found said assessment more consistent with the medical evidence of record. (Docket No. 9, Trans., p. 19).

The ALJ then considered limitations imposed by complaints as to knee pain, without evidence of acute fracture, dislocation or destructive bone lesion. The condition was a tear in the left medial meniscus and osteoarthritis, which improved when plaintiff underwent arthroscopic surgery of the knee. The treating orthopedist, Dr. Rafael Fernández-Soltero, did not show any severe physical limitation due to the knee condition but a mild decrease in range of motion of the leg, which was inconsistent with severity of alleged physical

limitation. A consultative rheumatologist, Dr. Michael Babilonia, found also slight limitation of motion of the left knee, without joint effusion, muscular atrophy or sensory loss of the extremities. (*Id.*, p. 18).

Considering the above evidence and conclusions, the ALJ determined through the date last insured plaintiff Padilla was unable to perform his past relevant work as a paper cutting machine operator, where he had engaged in semiskilled mental functions for his mental condition precluded same and limited jobs to unskilled simple tasks. (*Id.*, p. 19). As such, Padilla was found able to perform activities at light level of exertion and engage in simple unskilled mental tasks. Since Padilla was a younger individual on the date last insured, that is, 44 years old, with high school education and unable to communicate in the English language, considering his age, education, work experience and residual functional capacity, the ALJ concluded there were jobs that existed in significant numbers in the national economy and, thus, found him not under disability by using the medical-vocational guideline rules (Grid) as a framework for the additional non-exertional limitation had little or no effect on the occupational base of unskilled light work. (*Id.*, p. 20).

**LEGAL ANALYSIS**

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary

of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The ALJ in the instant case examined and analyzed plaintiff's case following the relevant five steps above described, as applicable, and at step four the ALJ considered plaintiff Padilla could not perform his past relevant work as paper cutting machine operator. Finding no significant non-exertional limitations from the mental condition as to light, unskilled work, the ALJ proceeded to use the Grid as framework and concluded there was a significant number of jobs in the national economy within Padilla's residual functional capacity that were light and unskilled. No vocational expert testified at the administrative hearing and plaintiff's counsel did not object to this effect.

The claimant has the burden under steps one through four of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Padilla was found by the ALJ unable to perform his previous past relevant work By determining the residual functional capacity for full range of light and unskilled kind of work, logically following that sedentary type of work was also covered, without need for the testimony of a vocational expert, the ALJ concluded Padilla was not under disability for there were also other jobs available that he could still perform.

Plaintiff's memorandum of law objects to the ALJ's findings and the appeal that affirmed same insofar as the ALJ used the Grid when a non-exertional impairment was present, together with not securing the testimony of a vocational expert to assess the eroding impact on plaintiff's occupational base caused by non-exertional impairments and particularized proof of the jobs plaintiff could still perform, if any. (Docket No. 14, memo., pp. 10-12). Plaintiff generally agreed with the medical evidence discussed as verified from

the record in that the mental condition imposed moderate mental limitations. Still, the use of the Grid is reserved to those mental impairments that are of a non-severe category and plaintiff's rating of moderate leans heavily towards the use of a vocational expert, except in the most clear cut cases.[7] Thus, plaintiff avers that, unless the ALJ deploys the proper legal standards and finds facts upon proper quantum of evidence, upon absence of a vocational expert, no substantial evidence supports the administrative decision.

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more

---

[7] Miranda Monserrate v. Barnhart, 520 F.Supp.2d 318 (D. Puerto Rico 2007).

weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).[8]

Succinctly, a review of the relevant medical evidence as to plaintiff Padilla's mental and physical conditions shows he suffered from a knee condition, osteoarthritis and depression. The fracture which caused a small erosion in the articular surface of the medial tibial plateau caused moderate restrictions, but without the presence of joint effusion, muscle atrophy or marked limitation. The osteoarthritis condition was diagnosed by X-ray after March 3, 2009, while Padilla was insured for disability purposes up to 2007. (Docket No. 10, Trans., p. 389). A rheumatologist' evaluation of March 2009 refers to the osteoarthritis of the left knee with rupture of the meniscus that was subsequently subject to surgical intervention. (*Id.*, p. 381). There was some limitation of movement of the left knee but all other upper and lower extremities movements were normal. (*Id.*, p. 382). Motor strength was excellent, without sensory deficit. The mental status observed by the rheumatologist at the time of examination on March 3, 2009 was considered normal. (*Id.*, p. 383).

As to the emotional condition, the psychiatric report indicated a recurrent severe major depression with psychosis but it is dated March 2, 2010. The frequency of medical appointments appears as for every 2 or 3 months, which the ALJ found inconsistent with the severity claimed for the condition. Additionally, there was no record of emergency room

---

[8] Even when a vocational expert is considered, the testimony must reflect the proper questioning by the ALJ to be considered substantial evidence in support of the administrative decision. *See* Rose v. Shalala, 34 F.3d 13,19 (1st Cir. 1994) (remanding for further proceedings because the ALJ did not ask the vocational expert proper questions about non-exertional limitations); *see, e.g.*, Arocho v. Secretary of HHS, 670 F.2d 374, 375 (1st Cir.1982).

visits or hospitalizations due to major depression, except for February of 2008, after plaintiff's insured period had expired. At the time of discharge, the assessment was of mild symptoms or some difficulty in social, occupational or school functioning. (Docket No. 10, pp. 128-145, Dr. Félix Maldonado Santos' report). By June 2008, the consultative evaluation of Dr. Lillian González indicated Padilla was able to maintain attention and concentration necessary to complete simple tasks on a sustained basis, was able to respond to minimal changes in the work setting and relate cordially with others. (*Id.*, p. 363). It was not until 2010, long after plaintiff Padilla's insured status had expired in 2007, the psychiatric assessment in a short note indicates that at the time the patient seemed very dysfunctional, with poor respond to criticism and complete a normal work-day. (*Id.*, p. 399).

Whether a claimant is disabled prior to expiration of his coverage for disability purposes depends on the existence of credible and reliable evidence of the severity of the condition during the critical period. Thus, a claimant must meet the burden of establishing by credible evidence that the mental impairment was of disabling level as of last date on which he qualified for disability coverage being insufficient to establish that the mental impairment had its roots prior to that date. Deblois v. Secretary of Health & Human Servs., 686 F.2d 76 (1st Cir. 1982). As such, claimant is considered not being able to establish that his mental impairment disabled him from performing work before his last insured period expired. Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).[9]

---

[9] Medical evidence generated after a claimant's insured period expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached a disabling severity before his insured period expired. Deblois, 686 F.2d at 79.

This Magistrate Judge has further considered the presence of non-exertional impairments, such as a mental condition or of disabling pain, are treated differently under the regulatory scheme for once plaintiff cannot return to his previous work, the burden shifts to the Commissioner to prove the existence of other jobs in the national economy that could be performed. 20 C.F.R. §404.1520(f) and (g). [10] The Grid is designed to enable the Commissioner to satisfy the above burden of proving the existence of other jobs in a streamlined manner without having to resort to the testimony of vocational experts. However, the Grid is predicated on an individual having an impairment which refers to limitations as to strength requirements (exertional) of jobs, for which non-exertional limitations are not accurately reflected by the Grids as to what jobs would or would not be available. *See* Gagnon v. Secretary of Health & Human Servs., 666 F.3d 662, 665 n. 6 (1st Cir. 1981). Where there are non-exertional impairments that significantly affect the ability to perform the full range of jobs, the Commissioner must carry this burden of proving the availability of jobs in the national economy by other means, typically with the use of a vocational expert. If the exertional limitation is found not to impose significant restrictions in the range of work a claimant is exertionally able to perform, reliance on the Grid is

---

[10] "(f) Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (4) of this section, with the physical and mental demands of your past relevant work. See paragraph (h) of this section and §404.1560(b). If you can still do this kind of work, we will find that you are not disabled.
(g) Your impairment(s) must prevent you from making an adjustment to any other work.
(1) If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you cam make an adjustment to other work..."

Romualdo Padilla Madera v. Commissioner of S.S.
Opinion and Order
Civil No. 12-1357 (CVR)
Page No. 16

appropriate. *See* Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989)(citations omitted).

Since at the fifth step it is for the Commissioner to establish the existence of other jobs that exist within a claimant's residual functional capacity, having the ALJ concluded that Padilla was not precluded from the performance of light and/or sedentary type of work that was unskilled, using the Grid as a framework it was appropriate to find plaintiff not disabled, as supported by substantial evidence on the record as a whole. Rules of Grid could be relied upon and a vocational expert did not have to be called where evidence established that disability benefits conditions did not significantly diminish the ability to perform most jobs. Pérez-Torres v. Secretary of Health & Human Servs., 890 F.2d 1251, 1254 (1st Cir. 1989).[11]

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[12] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based

---

[11] Perez-Torres found that pain and a mental condition did not significantly diminish claimant's ability to perform jobs in the sedentary range. As such, the rules of the Grid could be relied upon and a vocational expert did not have to be called where evidence established the claimant's pain and mental condition did not significantly diminish his ability to perform most jobs in sedentary range.

[12] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in the record as whole.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes that the Commissioner's decision is hereby AFFIRMED.

Judgment to be entered accordingly.

In San Juan, Puerto Rico, on this 3rd day of April of 2013.

                                          S/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ RIVE
                                          UNITED STATES MAGISTRATE JUDGE